IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FELICIA KINNEBREW, | ) | Case No. 1:20-cv-0427 |
| | ) | |
| Plaintiff, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF | ) | THOMAS M. PARKER |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## I.      Introduction

Plaintiff, Felicia Kinnebrew, seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.  This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b).  Because the Administrative Law Judge ("ALJ") failed to properly apply the principle of *res judicata* as explained in *Drummond v. Commissioner of Social Security,* 126 F.3d 837 (6th Cir. 1997) and *Earley v. Commissioner of Social Security,* 893 F.3d 929 (6th Cir. 2018), I recommend that the Commissioner's final decision denying Kinnebrew's DIB and SSI applications be VACATED and that her case be REMANDED for further consideration.

## II.      Procedural History

Kinnebrew filed for DIB and SSI on May 5, 2017.  (Tr. 416, 423).[1]  She alleged that she became disabled on March 25, 2017 due to "leg pain and arthritis in both legs, hip replacement

---

[1] The administrative transcript is in ECF Doc. 9.

needed, walks with cane, arm pain in both arms, watery eyes, cannot sit up for more than one hour, fluid on body and high blood pressure." (Tr. 416, 442). The Social Security Administration denied Kinnebrew's applications initially and on reconsideration. (Tr. 339, 348, 360, 367, 372, 379). Kinnebrew requested an administrative hearing. (Tr. 385). ALJ Keith Kearney heard Kinnebrew's case and denied her claims in a February 27, 2019, decision. (Tr. 22-35). On January 31, 2020, the Appeals Council denied further review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-4). On February 25, 2020, Kinnebrew filed a complaint challenging the Commissioner's decision. ECF Doc. 1.

## III.  Evidence

### A.  Relevant Medical Evidence

In June 2016, an X-ray of Kinnebrew's left hip showed severe degenerative changes of the left femoral head and left acetabulum. (Tr. 727, 755). In August 2016, Dr. Garrett LaSalle noted that Kinnebrew's musculoskeletal complaints, including pain in her low back and knees, were likely related to her altered body mechanics and increased weight. (Tr. 728). On March 2, 2017, Kinnebrew saw Dr. Lasalle for left hip pain and diffuse musculoskeletal pain. She reported that her pain had been improving with medication but worsened with extended walking. (Tr. 709). Dr. Lasalle recommended that Kinnebrew begin aerobic activity, such as walking five minutes every day; that she have a Behavioral Health consult in order to address the behavioral/depressive aspects of chronic pain; and to continue losing weight so she could obtain a left hip replacement. (Tr. 710).

On March 2, 2017, Kinnebrew saw podiatrist, Adrienne Loretz, D.P.M., for left ankle pain, swelling and weakness. (Tr. 670-671). Examination showed non-pitting edema of the lower extremities, localized edema in her left foot and ankle, decreased ranges of motion in both feet and ankles with pain, decreased muscle strength in her left foot, pain with palpation of her left

peroneal tendons and anterior aspect of her left ankle and inability to perform a single limb rise on the left.  (Tr. 670).  Dr. Loretz diagnosed left posterior tibial tendonitis, left osteoarthritis, and bilateral edema with pain in the lower extremities, left greater than right.  Dr. Loretz discussed conservative vs. surgical treatment options for Kinnebrew's feet and ankle conditions.  Kinnebrew opted for physical therapy again and orthotic inserts/braces.  Dr. Loretz also prescribed methylprednisolone.  (Tr. 671).

On March 8, 2017, Kinnebrew was evaluated at Sports and Spine Physical Therapy for her increased pain with weight bearing activities related to left ankle instability, left knee pain and edema.  (Tr. 487-488).  Kinnebrew had a moderate to severe limp on her right side, decreased balance of her lower extremities, decreased range of motion, decreased strength, decreased proprioception and increased edema.  The evaluator noted that Kinnebrew also complained of symptoms resembling fibromyalgia from her neck to her feet.  (Tr. 488).

Kinnebrew followed-up with Dr. Loretz on March 15, 2017.  Kinnebrew reported less pain and swelling in her left ankle after taking the prescribed medication, and she stated that she really wanted to get back to her normal activities.  Examination findings were essentially the same, although less edema was noted in the left foot and ankle.  (Tr. 668).  Dr. Loretz encouraged Kinnebrew to continue physical therapy and schedule casting for orthotics.  (Tr. 669).

In April 2017, Kinnebrew began physical therapy in a decreased weight bearing environment to improve her knee joint mobility, ankle stability, and sitting, standing and walking tolerances and to enable greater ability to perform activities of daily living and functioning. (Tr. 623-635).

On May 9, 2017 Dr. Loretz prescribed a disability placard and a walking cane.  (Tr. 687-688).  Kinnebrew returned for pain management on May 10, 2017 complaining of pain in her

neck, low back, shoulders, knees and ankles.  (Tr. 703-705).  Dr. LaSalle's recommendations remained the same.  (Tr. 704).

On May 11, 2017, Kinnebrew reported to Dr. Loretz that static PT had slowly helped to improve her muscle strength and activity level.  (Tr. 662).  However, she still had sharp, achy pain made that was worse with all weight bearing activities, and her symptoms were severe unless she took her medications.  Kinnebrew also reported that she had been using a cane for her weight bearing activity.  (Tr. 662).  Kinnebrew said she was making slow progress with aquatic physical therapy; but she still presented with decreased functional status (moderate difficulty with squatting and stairs), gait deviation (moderate to severe limp on right lower extremity, improved with cane), decreased range of motion, decreased strength, decreased balance in her lower extremities and decreased proprioception, and symptoms resembling fibromyalgia from her neck to her feet. Continued physical therapy was recommended.  (Tr. 686).

On May 23, 2017, Kinnebrew consulted with Stanley Fireman, LISW, of Behavioral Medicine.  (Tr. 772-774).  She complained of pain everywhere.  She was walking slowly with a cane and appeared to be in pain.  (Tr. 773).  She admitted experiencing changes in mood, feelings of frustration, irritability, some anxiety, depression and anger.  She reported spending her days at home watching television and often staying in bed with her legs elevated to reduce swelling.  She weighed 268 pounds, down from a high of 400 pounds.  Mr. Fireman recommended psychological counseling to manage Kinnebrew's depression.  (Tr. 774).

Kinnebrew saw Dr. Loretz on July 5, 2017.  She reported she continued to use a cane for weight bearing activity and displayed a moderate to severe limp, improved with the cane.  (Tr. 652, 683-684).  She still presented with decreased functional status, gait deviations, decreased range of motion, strength and proprioception.  She stated shed continued to make slow progress

with aquatic physical therapy and noted improvement in her patellofemoral joint alignment with taping of her knees.  (Tr. 683).

Kinnebrew saw her primary care physician, Jodie Strauss, D.O., on October 4, 2017.  Dr. Strauss noted that Kinnebrew continued to lose weight, had continued pain management and aquatic therapy, but reported that she still had joint pain was using a cane.  (Tr. 768-769).

On October 5, 2017, Kinnebrew reported to Dr. Loretz that she had 50% improvement with her strength and activity levels since her first appointment through the combination of medications and physical therapy.  (Tr. 791).  However, she still had sharp, achy pain worse with all weight bearing activities, which got better with heat, rest and medications.  She had a minimal to moderate limp of her right lower extremity when she began to walk, which increased to moderate to severe with increased walking duration (but was improved with use of cane); she also reported moderate difficulty with squatting and stairs.  She still had deficits in functional status, gait, range of motion, strength, balance and proprioception.  (Tr. 792).

Kinnebrew continued physical therapy sessions to improve her mobility with ambulation, standing tolerances, activities of daily living and work activities.  (Tr. 787-790).  She reported increased symptoms in her lower extremities, hips and knees with changes in weather.  She reported that she still used a cane.  (Tr. 787, 788, 927, 928).

On November 2, 2017, Mr. Fireman focused counseling on pain management.  He used cognitive therapy and verbal enforcement to help Kinnebrew manage her pain and stress, explore her depression and anxiety, monitor her sleep and increase her functional activities.  (Tr. 857-858).  His diagnostic impression was pain disorder with psychological factors secondary to myalgia.  (Tr. 858).

On February 7, 2018, Kinnebrew reported increased right ankle pain and severe osteoarthritic hip pain to Dr. Strauss.  (Tr. 860-868).  Dr. Strauss's diagnosis included

osteoarthritis of the left hip, amplified musculoskeletal pain and chronic pain of the right ankle, and she prescribed a nonsteroidal anti-inflammatory. (Tr. 861).

On February 8, 2018, Dr. Loretz examined Kinnebrew for right ankle pain and swelling, which had worsened over the preceding three weeks. (Tr. 851-853). Kinnebrew reported that she had been trying to be more active, but that her feet would "give out" on her. She complained of extreme throbbing pain in her right ankle associated with swelling most days. (Tr. 852). Examination showed non-pitting lower edema bilaterally with localized edema in the right foot and ankle associated with warmth, decreased range of motion of both ankles (right greater than left), associated with pain, decreased muscle strength of the left foot and guarded in the right foot, inability to perform a single limb rise bilaterally, pain with palpation of the anterior aspect of the left ankle and the right Achilles tendon, and exostosis with palpation along the anterior aspect of the ankle and dorsal midfoot bilaterally. (Tr. 853). Dr. Loretz added a diagnoses of Achilles tendonitis of the right foot and ankle equinus bilaterally (right greater than left), applied a splint and compression wrap to Kinnebrew's right ankle, referred her for additional physical therapy and prescribed a Medrol Dosepak. (Tr. 853).

Kinnebrew returned to Sport and Spine Physical Therapy on February 9, 2018 for a spine evaluation. She reported pain of 10/10 in both hips and upper legs, increased with prolonged sitting and standing. Examination showed decreased range of lumbar motion, diminished left knee reflexes, an inability to straight leg raise on the left, functional limitations including an inability to lift from floor and severe difficulty standing and walking, decreased facet joint mobility and an antalgic gait with use of a cane. (Tr. 925-926). Kinnebrew was scheduled for therapy to allow for increased functional ability and to assist with improving her gait pattern. (Tr. 926).

Kinnebrew participated in aqua therapy sessions over the next several months with increased symptoms in her hips and low back with weather changes. (Tr. 907-924). Taping of her

ankles and knees proved helpful.  (Tr. 920, 921, 924).  Her symptoms did not worsen with exercises in a decreased weight bearing environment because she felt better once in the pool.  (Tr. 915, 916, 917).

Amy Firrell, APRN, CNP, took over Kinnebrew's primary care for Dr. Strauss in July 2018.  On July 11, 2018, Kinnebrew presented with bilateral knee and left hip pain.  (Tr. 869).  Nurse Firrell diagnosed osteoarthritis of both knees for which she prescribed methylprednisolone and advised rest, ice, elevation and compression.  She encouraged Kinnebrew to lose weight and to consult with someone for nutrition therapy.  (Tr. 870).

### B.     Relevant Opinion Evidence

#### 1.     Treating Physician – Adrienne Loretz, DPM

On April 7, 2017, Dr. Loretz opined that Kinnebrew would eventually need hip surgery, but that she had been advised to wait and to attempt to reduce her body weight.  Dr. Loretz's letter reported that hip and knee pain caused Kinnebrew to favor her left ankle, which had led to problems with stability, although physical therapy had helped decrease her pain and increase her range of motion.  Dr. Loretz recommended that Kinnebrew slowly transition into regular physical therapy and that she should start part-time work after May 12, 2017.  (Tr. 689).

#### 2.     Treating Source[2] – Amy Firrell, CNP

On October 23, 2018, Amy Firrell, CNP, completed a physical medical source statement. (Tr. 930-934).  Ms. Firrell reported that Kinnebrew had bilateral knee and left hip pain, worse with ambulation, exacerbated by obesity.  (Tr. 930).  Ms. Firrell opined that Kinnebrew could sit for 30 minutes at a time, stand for 10-15 minutes at a time, and stand/walk for less than two hours total in

---

[2] Because Ms. Firrell and Ms. Ontko completed the medical source statement on the first day they examined Kinnebrew, they were not considered treating sources.  And because Kinnebrew filed her claims after March 27, 2017, the ALJ was not required to defer to treating source opinions or assign any special weight to them.  20 C.F.R. § 404.1520c(b) and 20 C.F.R. § 416.920c(b).

an eight-hour workday.  However, Ms. Firrell noted that Kinnebrew's abilities "would need to be determined by a functional capacity exam."  (Tr. 931).  Ms. Firrell also opined that Kinnebrew would need to elevate her legs with prolonged sitting and would need to use a cane for occasional standing or walking due to pain and weakness.  (Tr. 932).

On the same day, at the request of Ms. Firrell, Cristine Ontko, OTR/L, performed a physical capacity evaluation and may have assisted in completing the medical source statement.  (Tr. 938-941).  Ms. Ontko opined that Kinnebrew was only able to work 5 hours and 31 minutes per day due to her need to alternate between sitting and standing.  She opined that Kinnebrew's unskilled sedentary occupational base was significantly eroded by her inability to walk, stand and sit for long enough periods.  (Tr. 940-941).  She also opined that Kinnebrew was occasionally able to perform reaching, above shoulder reaching, simple grasping, pinching, fine coordination and gross coordination.  (Tr. 940-941).

### 3.    Consulting Psychological Examiner

On August 16, 2017, Jorethia Chuck, Ph.D., conducted a psychological evaluation.  (Tr. 760-764).  Kinnebrew reported losing her job due to pain and swelling in her legs.  (Tr. 760).  She did not feel depressed but was angry that she could no longer work due to pain.  Kinnebrew reported difficulty falling asleep due to pain.  She was able to cook but needed to sit down after standing too long.  She was able to perform light household tasks, but they took a long time.  She could also grocery shop if she could hold onto the cart.  She used a cane to go up and down stairs and used a cane on the date of the evaluation.  (Tr. 762).  Mental examination showed cognitive functioning in the low average range.  (Tr. 763).  Dr. Chuck opined that Kinnebrew presented with significant symptoms of chronic pain but did not suffer from a diagnosable mental health condition.  (Tr. 763-764).

### 4.    State Agency Consultants

On July 26, 2017, state agency reviewing consultant, Sreenivas Venkatachala, M.D., reviewed Kinnebrew's medical records and adopted the physical residual functional capacity findings from the prior ALJ's March 24, 2017 decision.  (Tr. 288-290, 301-303).

On August 29, 2017, state agency psychologist, Kristen Haskins, Psy.D., reviewed Kinnebrew's records and concluded that Kinnebrew's mental health conditions (depression and anxiety) were not severe.  (Tr. 285-286, 298-300).

### C.    Relevant Testimonial Evidence

Kinnebrew testified at the ALJ hearing.  (Tr. 180-195).  She was 5'4" and weighed 265 pounds.  (Tr. 192).  Kinnebrew had finished high school.  (Tr. 193).  She lived with her 18-year-old daughter.  (Tr. 193).  She had a driver's license and drove to therapy twice a week.  (Tr. 194).

Kinnebrew previously worked as an STNA at Progressive Parma Care Center for 15 years. (Tr. 183).  She lost that job because she was limping.  Her doctor told her that she needed to lose weight.  (Tr. 182-183).  She tried to work at a different job for a couple of days but could not do it due to limping and pain.  (Tr. 185).

Kinnebrew had previously applied for a period of disability.  (Tr. 177, 180-181). Subsequent her last application, Kinnebrew testified that she was moving slower, had more pain and had been using a cane.  She was unable to prepare meals and could not sit more than an hour at a time.  (Tr. 181).  She spent most of her time lying on the couch with her feet propped up.  (Tr. 182).  Kinnebrew did not participate in any social activities, but friends and family came to visit her.  Her daughter did most of the cooking, cleaning and clothes washing for Kinnebrew.  (Tr. 188).

Kinnebrew had arthritis in both arms.  (Tr. 185).  She had pain in her left side worse than the right.  She had fluid retention, which was helped with steroid treatments.  (Tr. 187).

Kinnebrew took blood pressure medicine, Cymbalta and Naproxen for pain. (Tr. 188-189). She also took Vitamin D and steroid treatments. (Tr. 189). Her primary care doctor had been prescribing pain medication; Kinnebrew was no longer going to pain management. (Tr. 192).

Vocational Expert ("VE") Mary Everest also testified at the hearing. (Tr. 195-200). The ALJ asked the VE to consider an individual of Kinnebrew's age, education and work history who was limited to sedentary work with the following limitations:

- She could sit for sixty minutes before needing to stand and walk for five minutes, every 60 minutes while remaining on-task in an eight-hour workday;
- She could stand and walk 2 hours in an eight-hour workday;
- She could operate foot controls with right and left feet frequently;
- She could reach overhead frequently with the right and left upper extremities;
- She was limited to occasional climbing of ramps and stairs, but she could never climb ladders, ropes or scaffolds;
- She could frequently balance, but could occasionally stoop, kneel, crouch and crawl;
- She could never work at unprotected heights or near moving parts and could not operate a motor vehicle.

(Tr. 197-198). The VE opined that the hypothetical individual would not be able to perform Kinnebrew's past relevant work, but she would be able to perform the jobs of inspector, assembler and information clerk. And, those jobs would still be available for an individual who required a cane to ambulate. (Tr. 199). However, if the individual were off task 20% of any given workday, due to unrelenting pain or fear of pain, she would not be able to perform any jobs. She would also not be able to work if she needed to elevate her legs 50% of the time. (Tr. 199-200).

## IV.  The ALJ Decision

The ALJ made the following paraphrased findings relevant to this appeal:

As there is a prior ALJ decision, the undersigned must consider the findings of that prior decision pursuant to the principles of Acquiescence Ruling 98-4(6) and *Drummond v. Commissioner of Social Security,* 126 F.3d 837 (6th Cir. 1997).

* * *

There is no new or material evidence with respect to the previously adjudicated period. With respect to the unadjudicated period beginning on March 25, 2017, the undersigned must consider whether there is new and material evidence

regarding claimant's physical or mental impairments or symptoms.  A review of the record, … demonstrates no significant worsening of any impairment during the unadjudicated period, and, therefore, the undersigned is was bound by [the prior ALJ's] decision and must adopt those findings.  (Tr. 23-24).

* * *

Kinnebrew had the residual functional capacity to perform sedentary work, except she was able to lift, carry, push, and pull 10 pounds occasionally and less than 10 pounds frequently; she could sit for sixty minutes before she had to stand or walk for five minutes every 60 minutes while remaining on-task in an eight-hour workday.  She could stand and walk 2 hours each in an eight-hour workday.  She could operate foot controls with right and left foot frequently; she could reach overhead frequently with the left and right upper extremities; she was limited to occasional climbing of ramps and stairs, but she could never climb ladders, ropes or scaffolds; she could frequently balance, but could occasionally stoop, kneel, crouch and crawl;  she could never work at unprotected heights or near moving mechanical parts, and could never operate a motor vehicle.  (Tr. 29).

Considering her age, education, work experience, and residual functional capacity, there were jobs existing in significant numbers in the national economy that Kinnebrew could perform.  (Tr. 34).

Based on all of his findings, the ALJ determined that Kinnebrew had not been under a disability from March 25, 2017 through the date of the decision.   (Tr. 35).

## V.     Law & Analysis

### A.     Standard of Review

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied.  42 U.S.C. §§ 405(g), 1383(c)(3); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is not a high threshold for sufficiency.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision still cannot be overturned "'so long as substantial evidence also supports the conclusion reached by the ALJ.'"  *O'Brien v. Comm'r of*

*Soc. Sec.*, No. 19-2441, 2020 U.S. App. LEXIS 25007, at *15, 819 F. App'x 409 (6th Cir. Aug 7, 2020) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)).  Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Jones*, 336 F.3d at 476.  And "it is not necessary that this court agree with the Commissioner's finding," so long as it meets this low standard for evidentiary support.  *Rogers*, 486 F.3d at 241; *see also Biestek*, 880 F.3d at 783 ("It is not our role to try the case de novo." (quotation omitted)). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless.  *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error.").  Furthermore, the court will not uphold a decision, when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result."  *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-CV-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10 CV 017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).  Requiring an accurate

and logical bridge ensures that a claimant, as well as a reviewing court, will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006).  Although it is the Commissioner's obligation to produce evidence at Step Five, the claimant bears the ultimate burden to produce sufficient evidence to prove that she is disabled and, thus, entitled to benefits.  20 C.F.R. §§ 404.1512(a), 416.912(a).

### B.     *Res Judicata*

Kinnebrew argues that the ALJ erred by failing to properly apply *res judicata* and the holding of *Drummond v. Commissioner of Social Security,* 126 F.3d 837 (6th Cir. 1997), when he decided he was required to adopt the prior ALJ's finding that Kinnebrew was not disabled.  The Commissioner argues that the ALJ properly evaluated the evidence and that his decision was supported by substantial evidence, even though he appears to have misstated the current law related to *res judicata* and *Drummond.*

The issue of whether or when a subsequent ALJ must adopt findings made by a prior ALJ was addressed by the Sixth Circuit in *Drummond v. Commissioner of Social Security,* 126 F.3d 837 (6th Cir. 1997), as well as by the Social Security Administration in Acquiescence Rulings 98-

3(6), 1998 SSR LEXIS 4 and 98-4(6), 1998 SSR LEXIS 5.  And, the Sixth Circuit revisited this

line of authority in *Earley v. Commissioner of Social Security,* 893 F.3d 929 (6th Cir. 2018).

### 1.    *Drummond v. Commissioner of Social Security*

Claimant Drummond applied for benefits but was denied on a finding that, while she could

no longer perform her past relevant work, she could perform sedentary level jobs that existed in

significant numbers.  *Drummond,* 126 F.3d at 838.  Drummond later reapplied for benefits but was

denied on the finding that she retained the ability to perform medium work.  *Id.* at 838-39.  After

an action in federal district court, Drummond appealed to the Sixth Circuit.  *Id.* at 839-40.

*Drummond* held: "[w]hen the Commissioner has made a final decision concerning a claimant's

entitlement to benefits, the Commissioner is bound by this determination absent changed

circumstances."  *Id.* at 840-42.  Thus, if an earlier ALJ has made a finding regarding a claimant's

RFC, a later ALJ must adopt that RFC determination absent evidence to the contrary.  *See, e.g.,*

*Gay v. Commissioner of Social Security*, 520 F. App'x 354, 356 (6th Cir., Apr. 2, 2013).

### 2.    **Acquiescence Rulings 98-3(6),** 1998 SSR LEXIS 4 **and 98-4(6),** 1998 SSR LEXIS 5

After finding that the ruling in *Drummond* conflicted with Social Security policy, the

Social Security Administration issued Acquiescence Rulings 98-3(6), 1998 SSR LEXIS 4 and 98-

4(6), 1998 SSR LEXIS 5.  With respect to how *Drummond* differed from Social Security policy,

the Social Security Administration observed:

> Under SSA policy, if a determination or decision on a disability claim has become
> final, the Agency may apply administrative res judicata with respect to a
> subsequent disability claim under the same title of the Act if the same parties, facts
> and issues are involved in both the prior and subsequent claims.  However, if the
> subsequent claim involves deciding whether the claimant is disabled during a
> period that was not adjudicated in the final determination or decision on the prior
> claim, SSA considers the issue of disability with respect to the unadjudicated
> period to be a new issue that prevents the application of administrative res judicata.
> Thus, when adjudicating a subsequent disability claim involving an unadjudicated
> period, SSA considers the facts and issues de novo in determining disability with
> respect to the unadjudicated period.

AR 98-3(6), 1998 SSR LEXIS 4, 1998 WL 274051 at 29771; AR 98-4(6), 1998 SSR LEXIS 5,

1998 WL 274052 at 29773.

> To resolve the conflict between Sixth Circuit authority and Social Security policy, the

Social Security Administration concluded that it would apply *Drummond*, within the Sixth Circuit:

> When adjudicating a subsequent disability claim with an unadjudicated period
> arising under the same title of the Act as the prior claim, adjudicators must adopt
> such a finding from the final decision by an ALJ or the Appeals Council on the
> prior claim in determining whether the claimant is disabled with respect to the
> unadjudicated period unless there is new and material evidence relating to such a
> finding or there has been a change in the law, regulations or rulings affecting the
> finding or the method for arriving at the finding.

AR 98-3(6), 1998 SSR LEXIS 4, 1998 WL 274051 at 29771; AR 98-4(6), 1998 SSR LEXIS 5,

1998 WL 274052 at 29773.  In other words, the Social Security Administration adopted

*Drummond's* holding, with respect to disability applications brought within the geographic

territory of the Sixth Circuit.

### 3. *Earley v. Commissioner of Social Security*

> In 2012, an ALJ denied Claimant Earley's application for disability benefits, after finding

that she retained the ability to perform a limited range of light duty work.  *Earley*, 893 F.3d at 930.

Earley later re-applied for benefits but was likewise denied based on hers failure to provide "new

and material evidence of a changed circumstance" as required by *Drummond.  Earley,* 893 F.3d at

931.  Earley appealed the matter to federal court, resulting in a decision that the *Drummond*

preclusion rule only applied if its application benefitted the claimant.  *Earley*, 893 F.3d at 931.

The matter was appealed to the Sixth Circuit, which took the opportunity to reexamine the

*Drummond* decision.

> Observing that "[u]nusual facts . . . led to some overstatement in *Drummond*," the court

nevertheless concluded that "*Drummond* correctly held that *res judicata* may apply to

administrative proceedings."  *Earley*, 893 F.3d at 933.  Thus, if a claimant files a second

application covering the same period of time, *res judicata* properly applies absent good cause to revisit the earlier determination.  But the court further ruled that *res judicata* has no application when a claimant files a subsequent application seeking benefits for a different period of time than was considered in the initial application.  Accordingly, "[w]hen an individual seeks disability benefits for a distinct period of time, each application is entitled to review."  *Id.*

The court was careful, however, to make clear that "[f]resh review is not blind review." *Id.* at 934.  Thus, while an ALJ who evaluates a subsequent application for benefits might not be bound to follow a previous determination, he may nevertheless "consider what an earlier judge did if for no other reason than to strive for consistent decision making."  *Id.*  Accordingly, "it is fair for an [ALJ] to take the view that, absent new and additional evidence, the first [ALJ's] findings are a legitimate, albeit not binding, consideration in reviewing a second application."  *Id.* at 933. In sum, *Earley* stands for the proposition that when an ALJ evaluates a subsequent application for benefits, covering a distinct period of time, the ALJ can properly consider a previous ALJ's RFC assessment and errs only when he considers the previous RFC a mandatory starting point for the analysis.  *See, Arendt v. Commissioner of Social Security*, 2019 U.S. Dist. LEXIS 35973, 2019 WL 1058263 (N.D. Ohio, Mar. 6, 2019).

Here, the Commissioner seems to recognize that there may have been a problem with ALJ Kearney's application of *Drummond* to Kinnebrew's claims.  See ECF Doc. 14 at 11.  The ALJ found that there was no significant worsening of any of Kinnebrew's impairments compared to what was found in her earlier claim and that he was "bound by" the prior decision.  But, as explained above, *Earley* held that *res judicata* has no application when a claimant files a subsequent application seeking benefits for a distinct period of time – as is the case here.

The Commissioner argues that *Earley* was issued *after* the ALJ's Kinnebrew decision (ECF Doc. 14 at 1), but that is incorrect.  The Sixth Circuit decided *Earley* on June 27, 2018, and

ALJ Kearney issued his decision on February 27, 2019.  Consequently, the *Earley* decision was issued before the ALJ decided he was "bound by" the prior ALJ's decision.

Even so, this court could find that ALJ Kearney's error was harmless if his decision otherwise showed that he took a fresh look at the evidence.  As argued by the Commissioner, reviewing courts that have applied *Earley* to ALJ decisions issued before it was issued have asked whether the ALJ, despite purporting to follow *Drummond*, nevertheless gave the evidence a fresh look.  *See Johnson v. Comm'r of Soc. Sec.,* No. 2:17-CV-13126, 2018 U.S. Dist. LEXIS 207893, 2018 WL 6440897, at *15 (E.D. Mich. Oct. 22, 2018) (collecting cases), report and recommendation adopted, No. 17-13126, 2018 U.S. Dist. LEXIS 206802, 2018 WL 6434778 (E.D. Mich. Dec. 7, 2018).  Thus, if the ALJ's decision demonstrates that he took a fresh look at the evidence and if his findings were supported by substantial evidence, this court should affirm his decision.

The Commissioner argues that the ALJ did indeed take a fresh look at Kinnebrew's evidence, and this appears to be true in part.  The ALJ found that the new treatment notes did not indicate worsening symptoms.  As support, he cited a therapy note from October 5, 2017 in which Kinnebrew reported 50% improvements since her initial visit.  (Tr. 31, 791).  Kinnebrew disputes the ALJ's conclusion, arguing that this treatment note did not provide a complete picture of Kinnebrew's condition in the new applications period.  I agree.  Some of Kinnebrew's conditions did seem to have improved: she had lost weight, regularly participated in aquatic therapy, and tried to be active.  On the other hand the record amply demonstrated that she: had difficulty walking, regularly used a cane (*See e.g.,* 652) and experienced swelling in her lower extremities, which required medication and leg elevation.  (*See, e.g.,* 774, 851-853).  The record shows that the reason Kinnebrew had been able to participate in aquatic therapy was because it did not require Kinnebrew to fully bear her own weight.

The ALJ also appears to have recognized that in the period following the prior ALJ decision, Kinnebrew's physician had prescribed a cane and Kinnebrew regularly used it to ambulate.  (Tr. 31).  The ALJ determined that because the record did not sufficiently demonstrate a medical provider's analysis of Kinnebrew's need for the cane – despite the provider having written a prescription – it would not affect his RFC determination.  This was an exact adoption of the prior ALJ's RFC. [3]  (Tr. 199).  Thus, it appears that the ALJ *did* take a fresh look at the evidence reflecting Kinnebrew use of a cane because he asked the VE whether that would impact her ability to work.

But Kinnebrew argues that the ALJ did *not* take a fresh look at her physical deterioration which had caused increased swelling in her legs and her need to elevate them. The prior ALJ decision found that Kinnebrew had improved edema in her lower extremities after receiving treatment in 2015.  (Tr. 268-269).  Kinnebrew argues that the evidence from the new period of alleged disability showed that she had experienced frequent leg swelling and the need to elevate her feet.  (Tr. 181-182. 670, 853, 932).  Kinnebrew argues that a fresh look at the evidence on this issue would necessarily have impacted the ALJ's RFC determination and that he erred by simply adopting the prior RFC.

I agree with Kinnebrew that she was entitled to a "fresh look" at the evidence, and that the evidence as a whole demonstrated a deterioration in her condition since the prior ALJ's decision. Because Kinnebrew's application involved a new period of alleged disability, the ALJ was not "bound by" the prior ALJ's decision.  The fact that he stated otherwise might have been harmless error, if he hadn't glossed over some of the record evidence that demonstrated the deterioration of Kinnebrew's condition.  The record showed that Kinnebrew's gait was abnormal (Tr. 488, 683,

---

[3] Because the VE testified that the need for a cane would not eliminate the identified sedentary jobs that the ALJ later found Kinnebrew could do, the ALJ's finding that Kinnebrew did not require a cane would not have impacted his RFC determination.

686, 787-790); she had regularly used using a prescribed cane to walk; and regularly experienced swelling in her lower extremities.  (Tr. 670, 853).  Had the ALJ expressly addressed these issues, a better argument could have been made that he complied with the "fresh look" approach endorsed in *Earley* even if he didn't mention that standard by name.  Because the ALJ decision is silent, we cannot know whether the ALJ considered this evidence and found the level of deterioration to be insignificant or whether, for some reason, he ignored or simply missed it.  As it is, it appears he incorrectly applied *Drummond* and found that he was "bound by" the prior ALJ's decision without taking a fresh look at all of the evidence, some of which demonstrated a deterioration of Kinnebrew's conditions.  This was not harmless error, as further explained below.  Because the ALJ did not apply the correct legal standards to Kinnebrew's applications, I recommend that the Commissioner's final decision be vacated, and the claim be remanded for further consideration.

### C.  Residual Functional Capacity

Kinnebrew also argues that the ALJ's RFC determination was not supported by substantial evidence because his decision failed to incorporate or discuss her need to elevate her legs.  ECF Doc. 13 at 16.  At Step Four of the sequential analysis, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence.  20 C.F.R. § 404.1520(e); 20 C.F.R. § 416.920(e).  The RFC is an assessment of a claimant's ability to do work despite her impairments.  *Walton v. Astrue*, 773 F. Supp. 2d 742, 747 (N.D. Ohio 2011) (citing 20 C.F.R. § 404.1545(a)(1) and SSR 96-8p, 1996 SSR LEXIS 5 (July 2, 1996)).  "In assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"  SSR 96-8p, 1996 SSR LEXIS 5.  Relevant evidence includes a claimant's medical history, medical signs, laboratory findings, and statements about how the symptoms affect the claimant.  20 C.F.R. § 404.1529(a); 20 C.F.R. § 416.929(a); *see also* SSR 96-8p, 1996 SSR LEXIS 5.

The RFC is a determination for the ALJ, but it must be based on *all* the relevant evidence. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 416.920(e); *Rudd v. Comm'r of Soc. Sec.,* 531 F. App'x 719, 728 (6th Cir. 2013).  Here, the ALJ seemingly ignored or missed Kinnebrew's statements, treatment notes and opinion evidence that all evidenced Kinnebrew's need to elevate her legs to reduce swelling.  (*See, e.g.,* Tr. 180-182, 670, 853, 932).  The ALJ never mentioned Kinnebrew's testimony that she needed to elevate her legs throughout the day to prevent swelling.  (Tr. 29-30, 191).  The ALJ only generally stated that Kinnebrew's statements concerning her symptoms were not entirely consistent with the medical evidence (Tr. 30).  The ALJ's his evaluation of her subjective complaints is afforded great deference.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3) (providing that, if the Commissioner's findings as to any fact are supported by substantial evidence, those findings are conclusive); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor when testifying.").  However, the ALJ never discussed Kinnebrew's claimed need to elevate her legs or explained why he found that this alleged limitation was not supported by the record.  And because Kinnebrew's need to elevate her legs has support in the record (*See, e.g.* Tr. 670, 853), the ALJ should have explained why he found otherwise.

Ms. Firrell's and/or Ms. Ontko's medical source statement also indicated that Kinnebrew should elevate her legs with prolonged sitting.  (Tr. 932).  The ALJ considered this opinion and stated:

> The undersigned has also read and considered the physical medical source statement from Amy Firrell, APRN, CNP, and Christine Ontko, dated October 23, 2018 (B16F).  This opinion is not persuasive as it was given after just one visit with the claimant and indicates that specific exertional limitations "would need to be determined by a functional capacity exam" suggesting she does not have the information necessary to make the relevant opinions (B16F/1-2).  It appears that a functional capacity evaluation was indeed performed and that portions of the "medical source statement" were completed after the evaluation of the examiner,

Christine Ontko, on October 23, 2018 (B16F; B17F).  Based on the one-time
evaluation, Ms. Ontko indicated the claimant could sit for 30 minutes, stand for 1-
15 minutes at a time, and could stand/walk for less than 2 hours total in an 8-hour
workday (B16F/2).  She also opined that the claimant has physical capabilities
consistent with the sedentary work level, but she "is unable to work full time"
taking into account her need to alternate positions from sitting to standing
(B17F/5).

(Tr. 32).  The ALJ was not required to defer to or give any specific evidentiary weight to the

medical source statements provided by Ms. Firrell and Ms. Ontko.  20 C.F.R. § 404.1520c(b); 20

C.F.R. § 416.920c(b).[4]  But he was required to consider it, and it appears that he did.  The

problem with the ALJ's consideration of this opinion is not that he applied the wrong standards or

failed to explain his reason for finding it less than persuasive; under the new regulations his

burden to explain the weight assigned to the opinion was relatively light.[5]  The problem is that the

ALJ never mentioned the opinion's limitation related to Kinnebrew's need to elevate her legs.

This suggests that he did not take a fresh look at the record – which evidenced Kinnebrew's need

to elevate her legs.

The ALJ's decision did not address:  Kinnebrew's statements that she needed to elevate

her legs to reduce swelling, treatment notes that reflected leg swelling, and the opinion of Ms.

Firrell and/or Ms. Ontko which stated that Kinnebrew needed to elevate her legs.  As already

noted, the prior ALJ's decision found that Kinnebrew maintained a normal gait without the need

for an assistive device and had improved edema in her lower extremities after treatment in 2015.

(Tr. 268-269).  Here, the record for the new period of alleged disability showed that Kinnebrew

had been consistently noted to limp, use a cane and elevate her legs throughout the day to reduce

---

[4] 20 C.F.R. § 404.1520c(b) and 20 C.F.R. § 416.920c(b) apply to Kinnebrew's claims because she filed
them after March 27, 2017.
[5] The Commissioner dedicates much of his brief to defending the ALJ's consideration of Ms. Firrell's
opinion under the new regulations.  ECF Doc. 14 at 5-9, 14-15.  This portion of the Commissioner's brief is
of little application here.  Kinnebrew has not argued that the ALJ erred under the agency's new regulations
for reviewing medical source opinions.  Instead, she has argued that he ALJ improperly applied *Drummond*
and failed to accounted for Kinnebrew's need to elevate her legs when he made his RFC findings.

swelling.  (Tr. 488, 670, 683, 686, 787-790, 853, 932).  The ALJ addressed Kinnebrew's use of a cane but never mentioned either the swelling in her legs or her need to elevate her feet.  Thus, the court must ask whether the ALJ's failure to revise Kinnebrew's RFC to account for these limitations was harmless error.

Some *Drummond* errors may be harmless.  *See, Ford v. Berryhill,* 2017 U.S. Dist. LEXIS 88926, 207 WL 2531588, * 3 (W.D. Ky. June 6, 2017).  There are three general types of *Drummond* harmless errors.  *Id.*  The first type occurs when the current RFC is more favorable to the claimant than the prior RFC.  *Id.*  Here, the ALJ adopted the prior RFC in its entirety, so it was not more favorable than the prior one.  The second type of harmless error may occur when, although the current RFC may appear to be less favorable to the claimant, "it may be substantially the same as the prior one in light of the definitions in the Social Security Rulings (SSRs) and other sources[.]"  *Id.*  Again, in this matter we have a precise adoption of the prior RFC; it does not appear to be *less* favorable to Kinnebrew.  Finally, the error may be harmless when the jobs relied upon by the current ALJ in support of his finding of no disability do not require the additional capacity.  *Id.*

Here, Kinnebrew's attorney asked the VE whether an individual would be able to perform the identified jobs if she were required to elevate her feet 50% of the day; and the VE responded, "that would eliminate all of these jobs."  (Tr. 200).   The ALJ did not ask any follow-up questions; he simply omitted the leg-elevation limitation from the RFC.  The ALJ could not have found Kinnebrew could perform the jobs the VE identified had he included a requirement that Kinnebrew be allowed to elevate her feet during the work day.  For this reason, it does not appear that the ALJ's *Drummond* error was harmless in this case.  Had the ALJ taken a fresh look at the evidence and found that the record supported a limitation for leg elevation, the jobs identified by the VE would have been eliminated.

In summary, I find that the ALJ erred in his application of *Drummond* to Ms. Kinnebrew's applications for disability insurance and SSI benefits.  Her new applications covered a different period of time from what was addressed in her earlier application, and the ALJ was not bound by the prior RFC determination.  For this reason, he should have taken a fresh look at the evidence, and perhaps he did.  The problem the court faces is that we cannot tell from the face of the decision whether the ALJ considered and discounted or simply ignored or missed the evidence regarding Kinnebrew's need to elevate her feet due to swelling.  The ALJ was required to consider all of the evidence in making his RFC findings.  The ALJ should have explained why he did not include a limitation for leg elevation in Kinnebrew's RFC.  Because the ALJ failed to properly apply *res judicata* as explained in *Drummond* and *Earley* and because it does not appear that his error was harmless, I recommend that the Court vacate the Commissioner's final decision and remand the case for further review.  Specifically, I recommend that the ALJ either revise his RFC determination to include a limitation for leg elevation or adequately explain why such a limitation is unwarranted.

## VI.    Recommendation

Because the ALJ failed to follow the proper legal standards announced in *Drummond* and further explained in *Earley,* and because the Court cannot find that his error was harmless, I recommend that the Commissioner's final decision be VACATED and the case be REMANDED for further consideration.

Dated: December 29, 2020

Thomas M. Parker

United States Magistrate Judge

23

_____

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).