# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| FELICIA KINNEBREW, | Case No. 1:20-cv-427 |
| Plaintiff, | Judge J. Philip Calabrese |
| v. | Magistrate Judge Thomas M. Parker |
| ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

## OPINION AND ORDER

Felicia Kinnebrew applied for disability benefits and supplemental security income under Titles II and XVI of the Social Security Act. The Social Security Administration denied her applications, both initially and after reconsideration. After a hearing, an administrative law judge also denied her applications. Ms. Kinnebrew appealed, but the appellate council declined review, rendering the opinion final. Then, Plaintiff filed this action, seeking review in federal court. The Magistrate Judge issued a report and recommendation that the Court vacate the Commissioner's decision and remand the case for reconsideration. The Commissioner makes two objections to this recommendation. For the reasons that follow, the Court **SUSTAINS** the Commissioner's Objections (ECF No. 17), **DECLINES TO ADOPT** the Report and Recommendation (ECF No. 16), and **AFFIRMS** the Commissioner's decision denying Ms. Kinnebrew's application for benefits.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 24, 2017, an administrative law judge denied Ms. Kinnebrew's application for benefits. ([ECF No. 9](#), PageID #228.) In May 2017, Ms. Kinnebrew reapplied for benefits. (*Id.*, PageID #466, 473.) In her second applications, which are at issue here, she maintains that, as of March 25, 2017, she was disabled due to severe osteoarthritis, which causes degenerative changes in her joints, back pain, weight gain, and altered body mechanics. (*Id.*, PageID #466, 492.) This onset date represents the day after the denial of a prior application for benefits. (*Id.*, PageID #227.) When the agency denied this second application initially and after reconsideration (*id.*, PageID #389, 398, 410, 417, 422 & 429), Ms. Kinnebrew requested an administrative hearing (*id.*, PageID #435).

### A. The Administrative Hearing

On November 6, 2018, the administrative law judge held a hearing to address both of Ms. Kinnebrew's applications and to determine whether she was disabled under the Social Security Act. (*Id.*, PageID #72–73.) At that hearing, the ALJ heard testimony from both Ms. Kinnebrew and a vocational expert, Mary Everest. (*Id.*, PageID #221.)

Ms. Kinnebrew testified that she lost her job because she was limping and that it was difficult to find and maintain other employment due to her limp. (*Id.*, PageID #232–233, 235.) She also testified that her pain is severe and that she needs a cane all of the time. (*Id.*, Page ID #231–232.) In regard to what changed since her last application for benefits, she maintained that her pain increased substantially and that she cannot prepare her own meals, participate in social activities, or sit for more

than an hour at a time, resulting in what she described as a poor quality of life. (*Id.*, PageID #231.) She testified that she spends most of her time lying on the couch with her feet elevated. (*Id.*, PageID #232.)

Vocational expert Mary Everest testified about what work, if any, would be available to Ms. Kinnebrew, accounting for her ailments. (*Id.*, PageID #246.) Everest considered a hypothetical person who could sit for an hour before needing to stand and walk around for five minutes, each hour, for an eight-hour workday; could stand and walk two of eight hours in a workday; could operate foot controls with her right and left feet; and could reach over her head with both arms; could balance, but only occasionally stoop, kneel, crouch or call, and could never work at unprotected heights or operate a motor vehicle. (*Id.*, PageID #247–48.) With these limitations, Everest determined that Ms. Kinnebrew could perform jobs like inspector, assembler, or information clerk and that she could do so even with her cane. (*Id.*, PageID #249.) But the vocational expert also opined that someone could not perform *any* job if the individual were either not working twenty percent of the workday due to pain or needed to keep her feet elevated at least fifty percent of the time. (*Id.*, PageID #249–51.)

**B.     Relevant Non-Testimonial Evidence**

Between 2016 and 2018, Ms. Kinnebrew sought care from a host of doctors, nurses, and physical therapists; although none testified at her administrative hearing, there were several treating source opinions before the administrative law judge. The report and recommendation provides a detailed summary of that medical opinion evidence. (ECF No. 16, PageID #1045–50.) Additionally, the administrative

3

law judge had before him other evidence—including reports from a psychological examiner and state agency consultants—which the Magistrate Judge's report and recommendation also addresses. (*See id.*, PageID #1050–52.)

### B.1. Medical Opinions

Dr. Adrienne Loretz is a podiatrist who treated Ms. Kinnebrew in April 2017. (ECF No. 9, PageID #739.) Dr. Loretz stated that Ms. Kinnebrew was under treatment for "posterior tibial tendon dysfunction, ankle instability and osteoarthritis of her left foot." (*Id.*) Dr. Loretz believed that Ms. Kinnebrew would eventually need a hip replacement, but that she should put the procedure off, given "her age and weight issues." (*Id.*) Further, Dr. Loretz noted that Ms. Kinnebrew "responded well to physical therapy" and that she is "attempting to lose weight," but that she continues to favor her left side, causing her more "hip and knee pain," which further "agitates her left ankle." (*Id.*) Finally, Dr. Loretz suggested that Ms. Kinnebrew should "slowly transition back into regular physical activity and work" and recommended that she begin "part time work" by the middle of the next month. (*Id.*)

Amy Firrell, a certified nurse practitioner, completed a medical source statement for Ms. Kinnebrew on October 23, 2018. (*Id.*, PageID #980–85.) Firrell noted that Ms. Kinnebrew suffered from joint pain in her knee and hip and that she was achy, but that her obesity contributed to these issues. (*Id.*, PageID #980.) Also, Firrell estimated Ms. Kinnebrew's functional limitations, but noted that they "would need to be determined by a functional capacity exam." (*Id.*, PageID #981.) Christine Ontko, a registered/licensed occupational therapist, signed off on that evaluation. (*Id.*, PageID #984.) Later, Firrell or Ontko filled out the functional capacity checklist,

4

determining that Ms. Kinnebrew could not sit for more than thirty minutes at a time and that she could not stand for longer than fifteen minutes. (*Id.*) They noted that Ms. Kinnebrew could not stand or walk for more than two hours of an eight-hour day and that she needed a job that would permit her to walk around for a minute at least every half hour. (*Id.*) Also, they indicated that Ms. Kinnebrew needs to use a cane, but that she could occasionally reach, pinch, or grasp and that she had ample fine and gross coordination. (*Id.*, PageID #981–84.)

### B.2. Consulting Psychological Examiner

On August 16, 2017, Ms. Kinnebrew had a psychological exam, and the administrative law judge considered the report of that exam. (*Id.*, PageID #809–14.) Dr. Jorethia Chuck, Ph.D., noted that Ms. Kinnebrew reported suffering from swollen legs, but she was unsure why she was required to undergo "a mental health evaluation." (*Id.*, PageID 810.) As for her psychological state at the time, Ms. Kinnebrew denied any mental health issues; therefore, Dr. Chuck did not diagnose her with any DSM-V illness, nor did she find Ms. Kinnebrew suffered from any mental health ailments. (*Id.*, PageID 813–14.) While Dr. Chuck concluded Ms. Kinnebrew had "low average" cognitive functioning, short-term memory problems, and was depressed, she opined that Ms. Kinnebrew could "withstand the stresses and pressures" of "work activities" based on her mental abilities. (*Id.*, PageID #814.)

### B.3. State Consultants

Two state agency reviewing consultants—Dr. Sreenivas Venkatachala, M.D., and Dr. Kristen Haskins, Psy.D. evaluated Ms. Kinnebrew. First, on July 26, 2017,

5

Dr. Venkatachala reviewed Ms. Kinnebrew's medical records and adopted the residual functional capacity finding from the prior administrative law judge's opinion "based on AR 98-4," a Social Security Administration acquiescence ruling that the agency issued after the decision in *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997). (*Id.*, PageID #352.) That prior determination of Ms. Kinnebrew's residual functional capacity provided the basis for Dr. Venkatachala's opinion. (*Id.*, PageID #325–53.) Second, on August 29, 2017, Dr. Haskins determined that Ms. Kinnebrew suffered from depression and anxiety, neither of which was severe. (*Id.*, PageID #336, 350.)

### C. Administrative Law Judge's Decision

On February 27, 2019, after taking testimony and considering the record, the administrative law judge issued a written decision denying Ms. Kinnebrew's applications based on the prior determination that denied Ms. Kinnebrew's applications. (*Id.*, PageID #72–85.) That is, the administrative law judge concluded, notwithstanding a new alleged onset date, that res judicata required adoption of the determination of residual functional capacity the prior administrative law judge made. (*Id.*, PageID #73–74.) According to the administrative law judge, both the Principles of Acquiescence Ruling 98-4(6) and *Drummond* dictate this result. (*Id.*) The administrative law judge found that Ms. Kinnebrew presented "no new or material evidence" to demonstrate a "significant worsening" of her condition since her prior application. (*Id.* at PageID #73–72.)

Then, the ALJ conducted the customary five-step inquiry to determine whether Ms. Kinnebrew was disabled as that term is defined under 20 C.F.R. §§ 404.1520(a)

6

and 416.920(a). (*Id.* at PageID #74.) At step one, the administrative law judge found that Ms. Kinnebrew had not engaged in substantial gainful activity since March 27, 2017. (*Id.*, PageID 75.) At step two, he determined that Ms. Kinnebrew had several severe impairments, including "degenerative arthritis of the left hip; obesity; lumbar degenerative arthritis without sciatica; and bilateral peroneal tendonitis with edema." (*Id.*) He also identified several non-severe impairments with which Ms. Kinnebrew lives, including hypertension, depression, and a learning disorder. (*Id.* at Page ID #76.) At step three, the administrative law judge determined that Ms. Kinnebrew did not have an impairment or combination of impairments that meet or medically equal the severity required for one of the enumerated impairments in 20 C.F.R. Part 404, Subpart P, app. 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (*Id.* at PageID #78.)

As to step four, the ALJ determined that Ms. Kinnebrew's condition foreclosed her past relevant work as a state certified nurse assistant. (*Id.*, PageID #83.) However, the administrative law judge found that Ms. Kinnebrew's residual functional capacity would permit her to perform sedentary work, with several exceptions:

> The RFC limits the claimant to lift, carry[,] push, and pull 10 pounds occasionally and less than 10 pounds frequently; sit for sixty minutes before she has to stand or walk for five minutes every 60 minutes while remaining on-task in an eight-hour workday. She can stand and walk 2 hours each in an eight-hour workday; stand and walk 2 hours each in an eight-hour workday; operate foot controls with right foot frequently; reach overhead frequently with the left and right upper extremities; is limited to occasional climbing of ramps and stairs; but can never climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; never work at unprotected heights, never work

7

near or with moving mechanical parts, and can never operate a motor vehicle.

(*Id.*, PageID #83.)

Finally, at step five, the ALJ determined that Ms. Kinnebrew could perform jobs that exist in significant numbers in the national economy given her age, education, work experience, and RFC. (*Id.,* PageID #84.) Therefore, he found Ms. Kinnebrew was not disabled and denied her applications. (*Id.* at PageID #85.) Nearly a year later, on January 31, 2020, the Appeals Council denied further review. (*Id.*, PageID #51–54.)

### D. Report and Recommendation

In federal court, Plaintiff raised two issues with the ALJ's decision: (1) incorrect application of *Drummond* without considering *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018); and (2) an erroneous determination of residual functional capacity that failed to account for Ms. Kinnebrew's worsening of "symptoms and nonexertional limitations." (ECF No. 13, PageID #1000.) The Magistrate Judge issued a report and recommendation addressing both issues.

Regarding the first argument, the Magistrate Judge agrees with Plaintiff. (ECF No. 16, PageID #1059–60.) He recommends that res judicata does not necessarily bar Plaintiff's new claims for benefits under more recent Sixth Circuit precedent, *Early*, because Ms. Kinnebrew alleged a new period of disability. (*Id.*) The Magistrate Judge notes that the administrative law judge failed to address evidence that Ms. Kinnebrew needs to keep her legs elevated, which in his opinion was not a

8

harmless error because it "demonstrated a deterioration in her condition" since the first denial of benefits. (*Id.*, PageID #1061–62.)

As for the ALJ's determination of Ms. Kinnebrew's residual functional capacity, the Magistrate Judge determined that substantial evidence did not support the RFC determination because it was not based on "all relevant evidence." (*Id.*, PageID #1063.) According to the Magistrate Judge, the ALJ omitted evidence that Ms. Kinnebrew needed to keep her legs elevated throughout the day and further indicated that, although the ALJ enjoys substantial deference when evaluating claims of impairment, the omission of the leg elevation issue (or failure to even provide an explanation of that omission) was not a harmless error. (*Id.*, PageID #1063, 1066.) Based principally on her need to elevate her legs, the Magistrate Judge finds ample support in the record for Ms. Kinnebrew's physical deterioration since the last application. (*Id.*, PageID #1064–65.)

Although the ALJ was not required to give deference to the medical source opinions of Firrell and Ontko, the Magistrate Judge concludes that the ALJ still needed to consider them. (*Id.*, PageID #1064.) Had the ALJ taken a fresh look at the evidence by considering the opinions of Firrell and Ontko, the Magistrate Judge posits that he would have mentioned Ms. Kinnebrew's need to elevate her legs. (*Id.*) Based on the vocational expert's testimony, the need of an individual with the same impairments as Ms. Kinnebrew to keep her legs elevated fifty percent of the day would preclude all employment. (*Id.*, PageID #1055.) Therefore, the Magistrate Judge recommends that a fresh look at all the evidence would result in a

9

determination "that the jobs identified by the vocational expert would have been eliminated." (*Id.*)

### E. The Commissioner's Objections

The Commissioner objects to the Magistrate Judge's report and recommendation, arguing (1) the ALJ applied the correct legal standard from *Drummond*, as clarified by *Earley*; and (2) substantial evidence supports the ALJ's determination of Ms. Kinnebrew's RFC. (*See* ECF No. 17.) The Commissioner requests that the Court sustain its objections and affirm the decision denying benefits.

## ANALYSIS

The Court reviews de novo the portions of a magistrate judge's report and recommendation to which specific objections are made. 28 U.S.C. § 636(b)(1)(C); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). "De novo review requires the Court to re-examine the relevant evidence a magistrate judge reviewed to determine whether to accept, reject, or modify the report and recommendation." *Scott v. Saul*, No. 1:19-cv-2393, 2021 U.S. Dist. LEXIS 92052, at *12–13 (N.D. Ohio May 14, 2021); *see* 28 U.S.C. 636(b).

When a party objects, a district court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Rabbers v. Commissioner of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2004). "Substantial evidence" is more than a scintilla, but less than a preponderance. *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). It is relevant evidence that "a reasonable mind might accept as adequate

to support a conclusion." *Id.* If substantial evidence supports the Commissioner's findings, then the Court accepts them as conclusive, even if it would have reached a different outcome on the same facts. 42 U.S.C. § 405(g). Accordingly, the Court will remand a case for further administrative proceedings only if "the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Connor v. United States Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983); *see also Bowen v. Commissioner of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## I. Res Judicata: *Drummond* and *Earley*

At bottom, the Commissioner's objection to the report and recommendation stems from two Sixth Circuit cases and their progeny, *Drummond* and *Earley*, regarding what an ALJ must do when faced with a subsequent application for benefits.

### I.A. *Drummond*

"Social security claimants are bound by the principles of res judicata." *Drummond*, 126 F.3d at 841 (citations omitted). There, a claimant sought benefits for a period of disability from July 6, 1987 through August 2, 1990. *Id.* at 839. Some of that time period—from July 6, 1987 through July 28, 1988—duplicated a prior application, and the administrative law judge dismissed that portion. *Id.* In that overlapping portion, the previous administrative law judge determined that the claimant could engage in sedentary work, but because she was a "younger individual" at 49 years of age, she was not disabled. *Id.* at 838. For the remaining period—July 28, 1988 through August 2, 1990—the administrative law judge denied benefits,

11

reasoning the claimant could engage in a medium level of work and could "perform her past relevant work" as a textile machine operator. *Id.* at 839.

The claimant maintained she was entitled to benefits because the Commissioner was bound by res judicata to adopt the prior administrative law judge's determination that she was able to do sedentary work, and that now—because she was no longer a "younger individual" as in her prior claim and aged into the "person approaching advanced age" group, she was entitled to benefits. *Id.* Rejecting the Commissioner's argument that it was not bound by res judicata, the court held that, "[a]bsent evidence of an improvement in a claimant's condition, a subsequent" administrative law judge is "bound by the findings of a previous" one, meaning "absent changed circumstances" the Commissioner is bound by a prior final decision. *Id.* at 842. The Social Security Administration then adopted this holding for subsequent claims made in this Circuit. *See* AR 98-4(6), 1998 WL 474052; AR 98-3(6), 1998 WL 275051.

**I.B.** *Earley*

But *Drummond* was based on "unusual facts" that led to "some overstatement" in that decision. *Earley*, 893 F.3d at 933. In *Earley*, the Sixth Circuit clarified that res judicata applies "in both directions: to bar the government *and* individuals from relitigating a past final decision for no reason other than to take a second bite at the apple." *Id.* at 933 (citing 20 C.F.R. § 404.958(c)(1)). That is, res judicata applies where a claimant files a "second application for disability benefits" for "the same period of disability covered by" the first application. *Id.* But "[w]hen an individual seeks disability benefits for a new distinct period of time, each application is entitled

12

to review." *Id.* In a later claim, the subsequent administrative law judge should "consider[] what an earlier judge found[,]" and it would be "fair" for that successive administrative law judge to take the view that the prior findings "are a legitimate, albeit not binding, consideration in reviewing a second application" where no new evidence is provided. *Id.* This non-binding deference balances competing notions of "finality, efficiency, and the consistent treatment of like cases" with a claimant's right to "bring a second application" where she may choose to introduce any amount of evidence, or none at all, "after a failed application." *Id.*

The *Earley* Court recognized *Drummond* as a "black swan—the unusual situation in which the individual wanted the administrative law judge to make the same finding on one issue that he had made in a prior ruling." *Id.* at 934. In that court's view, *Drummond* is "'best understood as a practical illustration of the substantial evidence rule' in which the prior factual finding was 'such an important and probative fact as to render the subsequent finding to the contrary unsupported by substantial evidence.'" *Id.* (quoting *Albright v. Commissioner of Soc. Sec.*, 174 F.3d 471, 477–78 (4th Cir. 1999)). That is, after *Earley*, res judicata may apply to a subsequent claim, but only where a claimant presents no new evidence.

### I.C. Res Judicata

Against that backdrop, applying res judicata to a claimed disability from an unadjudicated period where the claimant submits new evidence does not *require* remand, but it *may* be necessary. Misapplying *Drummond*—that is, applying res judicata notwithstanding new evidence—can still result in harmless error in certain circumstances, including where: (1) the current residual functional capacity is more

13

favorable to the claimant than the prior one; (2) the current residual functional capacity is "substantially the same as the prior one in light of the definitions in the Social Security Rulings and other sources" despite appearing less favorable; or (3) "the jobs relied upon by the current ALJ in support of his finding of no disability do not require the additional capacity." *Arendt v. Commissioner of Soc. Sec.*, No. 1:18-cv-484, 2019 WL 1058263, at *9 (N.D. Ohio Mar. 6, 2019) (citing *Ford v. Berryhill*, No. 5:16-cv-115, 2017 WL 2531588, at *3 (W.D. Ky. June 6, 2017)). Of these three scenarios, the first does not apply. Because the ALJ determined that the current RFC is the same as the prior one, neither does the second. (*Compare* ECF No. 9, PageID #79 *with id.*, PageID #319.) But the third scenario—that jobs relied upon by the current ALJ in support of his finding of "no disability" do not require the additional capacity—may apply. This analysis collapses into review of the evidence the ALJ considered in reaching his "no disability" determination, to which the Court now turns.

## II.     Determination of the Current Residual Functional Capacity

The Magistrate Judge and the Commissioner have competing concepts about what the ALJ should have or did consider before making the current RFC determination. The Magistrate Judge recommends remand because, in his view, the ALJ grafted the prior RFC determination onto the new claim and failed to consider the leg elevation issue. (ECF No. 16, PageID #1061–66.) Further, the report and recommendation states that "the ALJ seemingly ignored or missed Kinnebrew's statements, treatment notes and opinion evidence that all evidenced [her] need to elevate her legs to reduce swelling." (*Id.*, PageID #1063.) The Commissioner objects

14

that the ALJ conducted a fresh review of the evidence for the unadjudicated period and arrived at the same conclusion as the prior ALJ—that this current decision was based on substantial evidence—and should, therefore, be upheld. (ECF No. 17, PageID #1069–71.)

### II.A. Substantial Evidence

"If substantial evidence supports the ALJ's findings of non-disability, that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (citing *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)). But when an administrative law judge fails to "build an accurate and logical bridge between the evidence and the result[,]" the "Court cannot uphold an ALJ's decision[.]" *Id.* Further, "opinion source evidence the ALJ must *consider* differs from what the ALJ must *explain*." *Davis v. Commissioner of Soc. Sec.*, No. 5:19-cv-2929, 2021 WL 2642953, at *6 (N.D. Ohio June 28, 2021). Beyond treating medical source opinions, "[a]ny other type of opinion source does not require this same treatment." *Davis*, 2021 WL 2642953, at *6 (citing *Smith v. Commissioner of Soc. Sec.*, 482 F.3d 873, 875–76 (6th Cir. 2007)). Even so, failing to explain the weight accorded to a medical opinion likely warrants remand. *See Blakely v. Commissioner of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009).

To make a disability determination, an ALJ must first arrive at an RFC by considering all relevant medical and other evidence and determining whether a claimant is able to perform work available in the national economy, despite her impairments. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 416.920(e). Relevant evidence

15

includes a claimant's medical history, medical signs, laboratory findings, and statements about how the symptoms affect the claimant. 20 C.F.R. § 404.1529(a). An administrative law judge must consider "any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone." SSR 96-8P (S.S.A. July 2, 1996).

### II.B.  New Evidence in a Subsequent Claim

When making a residual functional capacity determination for a new period of disability, the administrative law judge cannot disregard new evidence, but instead reviews it "in the context of the entire record." *Civitarese v. Commissioner of Soc. Sec.*, No. 1:19-cv-2015, 2020 WL 4366077, at *15 (N.D. Ohio 2020) (citing *Earley*, 893 F.3d at 933–34). Where an administrative law judge fails to consider new evidence that is likely *dispositive* of a disability and a *different* outcome could result, remand is required. *See McClellan v. Astrue*, 804 F. Supp. 678, 683 (E.D. Tenn. 2011) (holding that the ALJ's apparent failure to consider a mental retardation listing with new evidence warranted remand because if he had considered the evidence, he would have found the individual presumptively disabled).

### II.C.  Evidence Relating to Leg Elevation

The report and recommendation criticizes the administrative law judge's failure to address Ms. Kinnebrew's statements that "she needed to elevate her legs to reduce swelling," that the "treatment notes" reflected leg swelling, and that "the opinion of Ms. Firrell and/or Ms. Ontko . . . stated that Kinnebrew needed to elevate her legs." (ECF No. 16, PageID #1064.) Accordingly, the Magistrate Judge

recommends that "for the new period of alleged disability" here, the administrative law judge "never mentioned either the swelling in her legs or the need to elevate her feet" and that failure to do so in making the residual functional capacity determination was not harmless error. (*Id.*, PageID #1064–65.)

The record evidence that Ms. Kinnebrew needed to elevate her feet consists of: (1) treatment notes from two visits to her podiatrist, Dr. Loretz (ECF No. 9, PageID #720, 903); (2) the *post hoc* functional capacity exam checkbox form that Firrell or Ontko completed (*id.*, PageID #983); and (3) testimony from Ms. Kinnebrew (*id.*, PageID #241). First, the podiatrist's office visit notes—from March 2, 2017, and February 8, 2018—indicate that Ms. Kinnebrew sought treatment for ankle swelling and pain. (*Id.*, PageID #720, 901–02.) At each visit, Dr. Loretz recommended that Ms. Kinnebrew engage in "RICE therapy at home," meaning she should "R[est,] I[ce,] C[ompress, and] E[levate]" the foot and ankle causing her pain. (*Id.*, PageID #721, 903.) Second, Firrell or Ontko indicated that "with prolonged sitting," Ms. Kinnebrew should elevate her legs, but they failed to denote either "how high" or for "what percentage of time" during the workday this should occur. (*Id.*, PageID #983.) Third, Ms. Kinnebrew testified that her legs "start swelling up real bad, and my doctors was like—keep telling me to elevate my legs to keep the swelling down." (*Id.*, PageID #241.) She reported that she spends "most" of her day either lying down or with her feet "propped up." (*Id.*)

Additionally, Ms. Kinnebrew's counsel posed a single question to the vocational expert on the subject. He asked the vocational expert if "a hypothetical individual

17

were to need to elevate their legs while doing the sitting that's required for a sedentary occupation *for 50% of the time that they're sitting to at least waist level*, would that impact their ability to perform those sedentary jobs?" (*Id.*, PageID #250 (emphasis added).) In response, the vocational expert opined that capacity would "eliminate all of" the jobs at the sedentary level. (*Id.*)

### II.C.1. The ALJ's Treatment of Leg Elevation

The ALJ did not mention any of this evidence in his decision. (*See id.*, PageID #69–85.) But the ALJ found Firrell and Ontko's opinion not persuasive because it came after "just one visit" with Ms. Kinnebrew. ([ECF No. 9](), PageID #82.) Regarding Dr. Loretz, the ALJ found her treatment notes "persuasive," despite not technically qualifying as a "medical opinion under 404.1527" because Dr. Loretz had "knowledge of the claimant's impairments[.]" (*Id.*, PageID #80.) As for Ms. Kinnebrew's testimony, the ALJ found that she "continued to attend regular physical therapy sessions" and "reported some relief in pain and stiffness," which suggested "her symptoms were not worsening as alleged." (*Id.*, PageID #82.) Her testimony, the ALJ determined, lent support to the notion that her symptoms "appear to respond to conservative treatment measures," and "the evidence does not support a worsening of symptoms since the prior ALJ decision after March 25, 2017." (*Id.*)

### II.C.2. Evaluation of the Evidence

However, no evidence or testimony suggests that any physician or other treater directed Ms. Kinnebrew to elevate her legs periodically throughout the workday. In response to Ms. Kinnebrew's complaints of "acute" pain, Dr. Lorenz directed her to "RICE." Beyond that, a single mark on a check-box form indicates Ms. Kinnebrew

18

should elevate her feet, but provides no direction as to how often or for how long. Finally, Ms. Kinnebrew testified that she felt better when elevating her feet. Although counsel posed a hypothetical question to the vocational expert who opined that a person needing to elevate her legs fifty percent of the workday would be disqualified from the sedentary jobs identified, nothing in the record provides a foundation for application of that hypothetical question to Ms. Kinnebrew. That is, no evidence shows that Ms. Kinnebrew had to elevate her feet for fifty percent of the workday.

In sum, the Commissioner's RFC and disability determinations are "not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted). Perhaps the evidence in the record would support a determination favorable to Ms. Kinnebrew. But if substantial evidence supports the Commissioner's findings, then the Court accepts them as conclusive, even if it would have reached a different outcome on the same facts. 42 U.S.C. § 405(g). Such is the case here. Substantial evidence supports the Commissioner's decision; therefore, he acted within the "zone of choice." A reasonable mind could accept that the ALJ's determinations—that Ms. Kinnebrew's condition had not substantially worsened during the unadjudicated period and the leg elevation issue was not supported by the record—were sufficient to reach the same RFC determination as before. Just because the ALJ reached the same determination does not mean that he misapplied *Drummond* or its progeny or committed legal error. Instead, it appears the ALJ

misstated the law but applied it correctly, reviewing anew the evidence from the unadjudicated period to arrive at his conclusion.

## CONCLUSION

For the foregoing reasons, the Court determines that the Commissioner acted within the permissible bounds of his discretion and based his denial of benefits on substantial evidence. Although the ALJ misstated what he believed was required of him based on *Drummond*, he proceeded to review the unadjudicated period based on the relevant evidence as *Earley* requires. Therefore, he did not misapply the law. Accordingly, the Court **SUSTAINS** the Commissioner's Objections (ECF No. 17), **DECLINES TO ADOPT** the Report and Recommendation (ECF No. 16), and **AFFIRMS** the Commissioner's decision denying Ms. Kinnebrew's application for benefits. The Court **DIRECTS** the Clerk to enter judgment accordingly.

**SO ORDERED**.

Dated: August 26, 2021

J. Philip Calabrese
United States District Judge
Northern District of Ohio